Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2025 01:07 AM CDT

- 820 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

State of Nebraska on behalf of Paul O. and
Nickolas O., minor children, appellee, v.
Samuel O., appellee, and Fannie W., appellant.
___ N.W.3d ___

Filed October 14, 2025. No. A-24-819.

1. Rules of the Supreme Court: Appeal and Error. Pursuant to Neb.
Ct. R. App. P. § 2-109(D)(4) (rev. 2024), the cross-appeal section of an
appellate brief must set forth a table of contents, a statement of the case,
assigned errors, propositions of law, and a statement of the facts.
2. ____: ____. When a brief of an appellee fails to present a proper cross-
appeal pursuant to Neb. Ct. R. App. P. § 2-109 (rev. 2024), an appellate
court declines to consider its merits.
3. Paternity: Appeal and Error. In a filiation proceeding, questions con-
cerning child custody determinations are reviewed on appeal de novo on
the record to determine whether there has been an abuse of discretion
by the trial court, whose judgment will be upheld in the absence of an
abuse of discretion.
4. Child Support: Appeal and Error. An appellate court reviews child
support determinations de novo on the record, but the trial court’s deci-
sion will be affirmed absent an abuse of discretion.
5. Child Custody. When determining the best interests of the child in the
context of custody, a court must consider, at a minimum, (1) the rela-
tionship of the minor child to each parent prior to the commencement
of the action; (2) the desires and wishes of a sufficiently mature child,
if based on sound reasoning; (3) the general health, welfare, and social
behavior of the child; (4) credible evidence of abuse inflicted on any
family or household member; and (5) credible evidence of child abuse
or neglect or domestic intimate partner abuse.
6. Child Custody: Visitation. No single factor is determinative, and
different factors may weigh more heavily in the court’s analysis,
 - 821 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

depending on the evidence presented in each case. The one constant
is that the child’s best interests are always the standard by which any
custody or parenting time determination is made.
7. Parent and Child: Armed Forces. A spouse’s absence due to military
deployment in itself cannot determine a child’s best interests.
8. Child Custody: Intent. A parent’s intentional refusal to promote and
facilitate the other parent’s involvement in a child’s important educa-
tional, religious, and medical needs constitutes a significant factor to
consider when making custody decisions.
9. Visitation. The best interests of the children are the primary and para-
mount considerations in determining parenting time.
10. ____. The Parenting Act provides that the best interests of a child
require a parenting plan that provides for a child’s safety, emotional
growth, health, stability, physical care, and regular school atten-
dance, and which promotes a child’s continued contact with his or
her families and parents who have shown the ability to act in the
child’s best interests.
11. Child Support: Insurance: Proof. In calculating a party’s child sup-
port obligation, the increased cost to a parent for health insurance for
the child shall be prorated between the parents. The parent paying the
premium receives a credit against his or her share of the monthly sup-
port, provided that the parent requesting the credit submits proof of the
cost of health insurance coverage for the child.
12. Child Support: Rules of the Supreme Court. A court may deviate
from the Nebraska Child Support Guidelines if their application in an
individual case would be unjust or inappropriate; the court must spe-
cifically find that a deviation is warranted based on the evidence and
state the reason for the deviation in the decree.
13. ____: ____. A deviation from the Nebraska Child Support Guidelines
without a clearly articulated justification is an abuse of discretion.

Appeal from the District Court for Lancaster County:
Matthew O. Mellor, Judge. Affirmed in part, and in part
reversed and remanded with directions.

David V. Chipman, of Monzón, Guerra & Chipman, for
appellant.

Katherine J. Doering, Deputy Lancaster County Attorney,
for appellee State of Nebraska.
 - 822 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

Steffanie J. Garner Kotik, of Kotik & McClure Law, for
appellee Samuel O.
Riedmann, Chief Judge, and Moore and Welch, Judges.
Riedmann, Chief Judge.
I. INTRODUCTION
Fannie W. appeals from the order of the district court for
Lancaster County establishing paternity, custody, and sup-
port for her two minor children. Fannie assigns the court
erred in awarding the parents joint physical custody, grant-
ing Samuel O. equal parenting time, and ordering her to pay
child support. For the reasons stated herein, we affirm in
part, and in part reverse and remand the cause with direc-
tions as set forth below.
II. BACKGROUND
Fannie is the biological mother of two minor children, Paul
O., born in 2015, and Nickolas O., born in 2019. In September
2024, the State of Nebraska filed a complaint against Samuel
to establish paternity and child support of the children. Fannie
and Samuel were never married and were not in a relationship
at the time of the State’s filing.
Samuel, by joint stipulation with the State, moved to add
Fannie as a party to the action and filed an answer acknowl-
edging paternity. He also filed a counterclaim against Fannie,
seeking joint physical and legal custody of the children and
requesting that the court determine parenting time and child
support. Additionally, he filed a motion for temporary orders,
requesting joint legal and physical custody and a child sup-
port determination.
A hearing was held on Samuel’s motion for temporary
orders in December 2023. Following this hearing, the court
entered a temporary order granting Fannie and Samuel joint
legal and physical custody, awarding Samuel the majority of
parenting time, and ordering him to pay Fannie monthly child
support of $122.
 - 823 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

In January 2024, Fannie filed a motion for further tempo-
rary orders and to vacate the previous order. She requested
that the court grant her physical custody of the minor children
and recalculate the amount of Samuel’s child support. Fannie
also filed an answer and counterclaim asking that the court
award her attorney fees, establish Samuel’s paternity of the
children, determine Samuel’s temporary and permanent par-
enting time, award her both temporary and permanent primary
legal and physical custody, and award her temporary and per-
manent child support.
A hearing was held on Fannie’s motion for temporary
orders. The court entered an order adopting Fannie’s proposed
temporary parenting plan but otherwise denied her motion to
vacate the prior order. This parenting plan maintained tempo-
rary joint legal custody but gave Fannie the final say in the
event of an impasse. It awarded Fannie temporary primary
physical custody of the minor children and granted Samuel
parenting time every other weekend from Saturday at 9 a.m.
to Monday at either 9 a.m. or the start of school, and every
Monday from 6 p.m. to Wednesday at 3 p.m.
A trial was held in August 2024. The evidence showed that
Fannie and Samuel had lived together on-and-off throughout
their relationship and had two children together, Paul and
Nickolas. In 2019, Samuel enlisted in the Army National
Guard. Between April and December, Samuel was at boot
camp or technical school for training. Then, from May 2021
to March 2022, Samuel was deployed. During both periods
of Samuel’s out-of-state military service, the children were in
Fannie’s sole physical custody.
While Fannie and Samuel were in a seemingly monogamous
relationship, Samuel entered into a relationship with Aketch
O. At the same time Fannie was pregnant with Nickolas, born
in October 2019, Aketch was pregnant with Samuel’s child,
born in January 2020. Fannie and Samuel ultimately separated
after Fannie’s discovery of Samuel’s infidelity.
 - 824 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

At the time of trial, Samuel and Aketch were not legally
married but had lived together for 2 years and had two chil-
dren. There was evidence that Paul and Nickolas had an affec-
tionate relationship with Samuel and that they would readily
go to him with their concerns, issues, or needs, and Aketch
testified she also had a good relationship with Paul and
Nickolas. Both Samuel and Aketch testified that their children
also had a close relationship with Paul and Nickolas and that
their oldest child and Nickolas enjoyed spending time together
due to their closeness in age.
Both Samuel and Aketch testified that, prior to the tempo-
rary orders, Fannie frequently denied Samuel time with the
children and his visitation with them “depend[ed] on how
[Fannie] felt.” According to their testimony, Fannie once kept
the children from Samuel for over a month, and on various
other occasions, he went more than a week without seeing
them because Fannie withheld them from him. Also, Samuel
testified that, even after the temporary order, he needed to call
the police to get custody of the children because Fannie did
not “want to follow the court order.”
The evidence also showed that Samuel worked 2:30 to
11 p.m. Monday through Friday and that he was required to
report for National Guard duty one weekend per month and
for 2 weeks once every year. On weekdays during Samuel’s
parenting time under the temporary orders, Paul and Nickolas
had spent weekday mornings with Samuel, during which he
got them ready, made them breakfast, and took them to school.
After Samuel went to work in the afternoon, Aketch would
pick up the children from school, help them with their home-
work, and get them ready for bed.
However, three nights a week, Aketch worked from 6:45
p.m. to 7:15 a.m. Her workdays fluctuated, but she typically
worked Wednesday, Thursday, and Friday. While Aketch
worked, during Samuel’s parenting time, her two children,
as well as Paul and Nickolas, went to Samuel’s mother’s
 - 825 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

house at 5:45 p.m. and stayed there until Samuel picked
them up sometime after 11 p.m. When he came to pick them
up, the children would be awakened and taken to Samuel’s
home to go back to sleep.
Fannie testified that sleep disruption during Samuel’s
parenting time under the temporary orders caused the chil-
dren to be tired and resulted in Paul’s crying more, missing
school, and performing poorly in school. However, Aketch
testified she did not believe the arrangement caused disrup-
tion to the children’s schooling, nor did she notice any diffi-
culties with the children’s going to school the day after they
stayed at Samuel’s mother’s home. Also, both Samuel and
Aketch agreed that Paul rarely missed school while in their
care and that Paul’s five, or fewer, absences were caused by
health complications.
The evidence further showed that, at the time of trial, Fannie
worked more than 40 hours per week as a certified nursing
assistant from 11 p.m. to 7 a.m. However, she had recently
graduated and obtained her licensed practical nursing degree.
She was actively applying for new jobs that would require her
to work from 6 a.m. to 6 p.m., or 6 a.m. to 3 p.m.
In her current role, Fannie was able to get the children
ready for school, transport Paul to and from school, help them
with their homework, feed them dinner, and take them to their
extracurricular activities. She left for work after the children
were asleep, and her mother, who had moved in with her in
April 2024, then cared for the children overnight.
Further, the testimony showed that Fannie had been
responsible for enrolling the children in school and extracur-
ricular activities and establishing their medical and dental
care. Paul and Nickolas attended the same school but were
in different grades. Paul’s schoolday went from 7:45 a.m.
to 2:55 p.m., and Nickolas’ schoolday was from 8:30 a.m.
to 2:30 p.m. Nickolas had a speech issue that required him
to start preschool early and to be placed on an individual
 - 826 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

education plan (IEP). Although Fannie has attended all of
Nickolas’ IEP meetings, she testified that she had never known
Samuel to attend one. On the other hand, Samuel testified
that Nickolas’ teacher had gone to Fannie’s home for the IEP
meetings, but that Fannie would not allow Samuel to “do it at
her house,” so he attempted to arrange with Nickolas’ teacher
to meet at the school instead.
Fannie also testified that Samuel had rarely taken the chil-
dren to their appointments and that there were issues transport-
ing Paul to his extracurricular activities during Samuel’s par-
enting time. She also stated she had discussed with Samuel the
idea of Paul’s starting therapy but did not inform Samuel she
had found Paul a therapist, who it was, or where the thera-
pist was located. Furthermore, Fannie failed to inform the
therapist that she and Samuel shared joint legal custody of Paul
under the temporary orders.
Samuel testified that he had previously taken the children
to one dentist appointment. He explained that he had offered
to take the children to other appointments, but Fannie would
not “ever give [him] a chance” and “never inform[ed] [him]
of any” appointments. They shared a “family calendar,” but
Fannie did not put the children’s doctor appointments on it.
Similarly, he testified that there were no difficulties with get-
ting Paul to his extracurricular activities until Fannie “decides
[she] don’t [sic] want to cooperate.” He explained that he had
not been on the email list for Paul’s basketball schedule when
the venue for a game had been changed and that when he
asked Fannie if anything had been changed, she told him to
“[g]o figure it out.”
The evidence also showed Samuel had health insurance
through his employer, and he testified he paid for a family
health insurance plan that covered Nickolas and Paul, as well
as one of his other children. Fannie, however, requested that
she be allowed to provide the children’s health insurance
through Medicaid.
 - 827 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

Ultimately, Samuel requested that the court award the
parents joint legal and physical custody and grant him
parenting time with the children on an alternating weekly
basis. Fannie requested that the parents share joint legal
custody but that she be granted primary physical custody
and that Samuel be awarded parenting time every other
weekend during the school year and every other week dur-
ing the summer.
The district court entered an order in September 2024,
finding that Samuel was the natural father of the minor chil-
dren, awarding the parents joint legal and physical custody,
and awarding parenting time on an alternating weekly basis.
Also, Fannie was ordered to pay $163 per month in child
support and Samuel was ordered to pay $2,000 of Fannie’s
attorney fees.
Fannie filed a motion to alter or amend, requesting that the
court alter its order as it pertained to legal and physical cus-
tody, parenting time, and child support. After a hearing on the
motion, the district court entered an order denying Fannie’s
motion as it pertained to custody and parenting time but modi-
fying its child support order so that Fannie would pay $150
per month in child support for two children and $94 per month
when there was only one minor child. Fannie timely appealed,
and Samuel attempted to cross-appeal.
III. ASSIGNMENTS OF ERROR
Fannie assigns, restated, the district court erred in (1)
awarding joint physical custody of the minor children, (2)
awarding the parents equal parenting time contrary to the
children’s best interests, and (3) ordering she pay Samuel
child support.
[1,2] Samuel attempted to raise a cross-appeal challenging
the attorney fees awarded to Fannie, but he failed to prepare
his brief on cross-appeal as a separate section headed “‘Brief
on Cross-Appeal’” and failed to prepare it in the same man-
ner and under the same rules as the brief for appellant. See
 - 828 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2024). Pursuant
to § 2-109(D)(4), the cross-appeal section of an appellate
brief must set forth a table of contents, a statement of the
case, assigned errors, propositions of law, and a statement of
the facts. Although Samuel’s brief contains a “Summary of
Argument on Cross Appeal” and “Argurment [sic] on Cross
Appeal,” it does not contain the other requirements. Brief
for appellee Samuel O. at 17. When a brief of an appellee
fails to present a proper cross-appeal pursuant to § 2-109, an
appellate court declines to consider its merits. Prinz v. Omaha
Operations, 317 Neb. 744, 11 N.W.3d 641 (2024). We do not
address it further.
IV. STANDARD OF REVIEW
[3] In a filiation proceeding, questions concerning child
custody determinations are reviewed on appeal de novo on the
record to determine whether there has been an abuse of discre-
tion by the trial court, whose judgment will be upheld in the
absence of an abuse of discretion. Kee v. Gilbert, 32 Neb. App.
1, 992 N.W.2d 486 (2023).
[4] An appellate court reviews child support determinations
de novo on the record, but the trial court’s decision will be
affirmed absent an abuse of discretion. Id.
V. ANALYSIS
1. Joint Physical Custody
Fannie assigns that the district court erred in awarding her
and Samuel joint physical custody. She asserts it would have
been in the children’s best interests to award her primary
physical custody.
[5] The Parenting Act “presumes the critical importance
of the parent-child relationship in the welfare and devel-
opment of the child and that the relationship between the
child and each parent should be equally considered unless
it is contrary to the best interests of the child.” Neb. Rev.
Stat. § 43-2921 (Reissue 2016). When determining the best
 - 829 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

interests of the child in the context of custody, a court must
consider, at a minimum, (1) the relationship of the minor
child to each parent prior to the commencement of the
action; (2) the desires and wishes of a sufficiently mature
child, if based on sound reasoning; (3) the general health,
welfare, and social behavior of the child; (4) credible evi-
dence of abuse inflicted on any family or household mem-
ber; and (5) credible evidence of child abuse or neglect or
domestic intimate partner abuse. Janda v. Janda, 32 Neb.
App. 953, 9 N.W.3d 212 (2024).
[6] Other relevant considerations include stability in the
child’s routine; minimalization of contact and conflict between
the parents; the general nature and health of the individual
child; the moral fitness of the child’s parents, including sexual
conduct; respective environments offered by each parent; the
age, sex, and health of the child and parents; the effect on
the child as a result of continuing or disrupting an existing
relationship; the attitude and stability of each parent’s charac-
ter; and parental capacity to provide physical care and satisfy
educational needs of the child. Id. No single factor is deter-
minative, and different factors may weigh more heavily in the
court’s analysis, depending on the evidence presented in each
case. Id. The one constant is that the child’s best interests are
always the standard by which any custody or parenting time
determination is made. Id.
Here, the court found the children’s best interests were
served through both parents’ ongoing involvement. The court
did not elaborate what specific facts formed the basis for its
conclusion, a practice which we discouraged in Janda, supra.
Unlike the lower court in Janda, however, the district court
here made a finding that it was in the best interests of the
children to be placed in the joint physical custody of their
parents. Fannie argues this was an abuse of discretion for two
reasons: (1) Samuel’s work schedule prevents him from par-
enting the children five out of the seven nights he has them
 - 830 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

and (2) she has always been the primary caregiver. We there-
fore limit our analysis to whether these two concerns should
have precluded the district court from awarding Fannie and
Samuel joint physical custody.
(a) Samuel’s Work Schedule
Fannie contends Samuel’s work schedule prevents him from
spending time with the children and requires they be in the
care of someone other than a parent during the majority of his
parenting time. She also argues his work schedule is disruptive
to the children’s sleep and causes them to be “very tired” and
“overly emotional.” Brief for appellant at 15.
Fannie urges us to follow Ritter v. Ritter, 234 Neb. 203, 450
N.W.2d 204 (1990), and find that due to Samuel’s work sched-
ule, the district court erred in awarding joint physical custody.
We acknowledge that the amount of time that a parent is able
to devote to a child is a consideration in resolving a child cus-
tody dispute, and we thus take this opportunity to contrast the
present case to the situation in Ritter, supra.
We first note that Ritter was decided prior to State on behalf
of Kaaden S. v. Jeffery T., 303 Neb. 933, 932 N.W.2d 692
(2019), which disapproved of the blanket rule disfavoring joint
custody. However, Ritter is instructive insofar as it relates to
Paul’s and Nickolas’ best interests.
In Ritter, supra, the Nebraska Supreme Court reversed the
decision of the trial court, which had awarded sole custody of
the minor child to the father, and instead awarded sole custody
to the mother. In that case, the father’s work schedule required
the child to be in the care of a babysitter for 17 to 18 hours of
the day, 5 days per week. On the other hand, the mother had
an established routine with the child, which included using a
daycare center for childcare 9 hours per day while she worked,
and she was able to call upon her parents, the child’s grand-
parents, for help if needed. See id. The court also noted that
awarding custody to the father would separate the minor child
from his half sister with whom he had a strong sibling bond,
 - 831 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

which would be contrary to his best interests. Id. Because of
these issues, among others, the court found it was in the child’s
best interests to award sole custody to the mother. Id.
Here, although we recognize Samuel’s work schedule
requires that he be away from the children weekday evenings,
Samuel has an established childcare routine in which Paul and
Nickolas are supervised by Aketch for 8 to 9 hours per day,
rather than 17 to 18 hours. He is also able to call upon his
mother for help supervising the children on the three nights per
week that Aketch works.
Although Fannie takes issue with the fact that Paul and
Nickolas are being cared for by someone other than Samuel
during his parenting time, Neb. Rev. Stat. § 43-2923 (Reissue
2016) states that the best interests of a child require that
the child’s families and those serving in parenting roles
remain appropriately active and involved in parenting
with safe, appropriate, continuing quality contact between
children and their families when they have shown the
ability to act in the best interests of the child and have
shared in the responsibilities of raising the child.
Aketch testified at trial that she was responsible for caring
for Paul and Nickolas the weekday evenings during Samuel’s
parenting time and that she had a close and positive relationship
with both children. We find that Aketch has served in a parent-
ing role regarding Paul and Nickolas and is included within
the meaning of § 43-2923. Although the children will spend
much of Samuel’s afterschool parenting time with Aketch, it is
not contrary to their best interests to have “continuing quality
contact” with her. See id.
We also note that both Fannie and Samuel are reliant on
others to help supervise the children during their parent-
ing time. Fannie’s mother typically supervised the children
while Fannie worked overnight. Further, Fannie testified she
was applying for new jobs. We note the new schedule would
require someone other than Fannie to supervise the children
in the mornings, get them ready for school, and potentially
 - 832 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

supervise them after school as well. We acknowledge this
reality to demonstrate that there are very few situations in
which working parents will not be reliant on the assistance
of nonparents in caring for their children. A custody arrange-
ment that requires this type of assistance is not necessarily
contrary to the child’s best interests.
Further, Samuel and Aketch’s children are included among
Paul and Nickolas’ family, and the evidence showed that, like
the child in Ritter, supra, the children had close relationships
with their half siblings. Joint physical custody prevents Paul
and Nickolas from being separated from, and assists them in
maintaining contact with, their half siblings, in accordance
with their best interests. See § 43-2923. See, also, Citta v.
Facka, 19 Neb. App. 736, 812 N.W.2d 917 (2012) (sound pub-
lic policy to keep siblings together).
Fannie also argues that Samuel’s work schedule caused the
children to become very tired and overly emotional because the
children’s sleep had been interrupted by Samuel’s picking them
up from his mother’s home after getting off work. However,
this assertion is unsupported by the record.
Under the original temporary order, which was in place
for approximately 2 months, Samuel’s parenting time always
ended on Sunday afternoons. During the subsequent approxi-
mately 7 months, the parties operated under the second tem-
porary order, in which Samuel was awarded parenting time
every other weekend and every Monday through Wednesday
afternoon. Samuel did not work on weekends, and Aketch did
not work on Tuesday nights. Thus, under the temporary orders,
the children were never returned to Fannie’s physical custody
after a night in which their sleep had been interrupted due to
Samuel’s work schedule.
Moreover, under the second temporary order, under which
the parents operated during the majority of this proceed-
ing, Samuel had parenting time only on weekends and
Monday and Tuesday nights. As stated, neither Samuel nor
Aketch worked on weekends, and Aketch testified she never
 - 833 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

worked Tuesday nights, nor did she typically work Monday
nights. Consequently, under the second temporary order, the
children’s sleep was not interrupted during Samuel’s parent-
ing time other than on an occasional Monday night when
Aketch worked.
For these reasons, any assertion by Fannie that the chil-
dren had become extremely tired or overly emotional because
of sleep interruption caused by Samuel’s work schedule is
unfounded. We conclude that Samuel’s work schedule does
not cause the award of joint physical custody to be contrary to
Paul’s and Nickolas’ best interests.
(b) Fannie as Children’s Primary Caregiver
Fannie argues that the district court abused its discretion by
not awarding her primary physical custody because the evi-
dence at trial showed she was the children’s primary caregiver.
She asserts that she has spent more time with the children
because Samuel’s military service has caused him to be gone
for extended periods of time and that she has historically taken
care of the children’s medical and educational needs.
[7] The evidence showed Samuel had been gone from
Nebraska, and had not seen the children, for a total of nearly 2
years due to his military training and deployment. A spouse’s
absence due to military deployment in itself cannot determine
the child’s best interests. Neb. Rev. Stat. § 43-4607 (Reissue
2016) states:
In a proceeding for custodial responsibility of a child
of a service member, a court may not consider a parent’s
past deployment or possible future deployment in itself in
determining the best interest of the child but may consider
any significant impact on the best interest of the child of
the parent’s past or possible future deployment.
Here, Samuel had returned from deployment in March 2022
and had been back in Nebraska for more than a year before
this action was filed. There was no evidence that Samuel’s
training and deployment had impacted the children’s best
 - 834 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

interests, other than Fannie’s being the children’s primary
caretaker during his absences. There was also no evidence that
Samuel would be deployed again or regularly spend significant
periods of time away from the children in the future.
Moreover, both Samuel and Aketch testified that Samuel
desired to spend more time with the children, but that it was
Fannie who often interfered or refused. Fannie did not dispute
their testimony. By interfering with Samuel’s and the chil-
dren’s relationship, Fannie acted in spite of the children’s best
interests. See Janda v. Janda, 32 Neb. App. 953, 9 N.W.3d
212 (2024) (although not determinative factor, promotion and
facilitation of relationship by one parent with other parent may
be considered when awarding custody).
Although we agree with Fannie that the evidence showed
that she was historically responsible for enrolling the chil-
dren in school, medical and dental care, and extracurricu-
lar activities, Samuel testified that he had tried to become
involved in the children’s care and that Fannie was not
cooperative. He had offered to take the children to medi-
cal appointments, but Fannie neither informed him of the
appointments nor put the appointments on the family calen-
dar. His testimony was supported by Fannie’s admission that
she had enrolled Paul in counseling without communicating
any details to Samuel.
[8] Samuel also testified that he had tried to participate in
the children’s education, particularly with regard to Nickolas’
IEP meetings and Paul’s extracurricular activities, but that
Fannie had again interfered or was uncooperative. We have
previously stated that a parent’s intentional refusal to pro-
mote and facilitate the other parent’s involvement in a child’s
important educational, religious, and medical needs consti-
tutes a significant factor to consider when making custody
decisions. See Burton v. Schlegel, 29 Neb. App. 393, 954
N.W.2d 645 (2021).
We recall that the district court found that both parents
were fit and proper persons to be awarded joint legal and
 - 835 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

physical custody of the children and that the best interests
of the children “will be maintained through the ongoing
involvement of both [Fannie] and [Samuel] with the chil-
dren.” Joint physical custody allows for the ongoing and
equal involvement of both parents and limits Fannie’s ability
to interfere with Samuel’s participation in parenting activi-
ties. We therefore conclude the district court did not abuse
its discretion in awarding Fannie and Samuel joint physical
custody of the children.
2. Parenting Time
Fannie assigns the district court erred in granting the
parents equal parenting time. She again takes issue with
Samuel’s work schedule and the time it allows him to spend
with the children, as well as the fact that it requires the chil-
dren’s sleep to be interrupted three nights per week during his
parenting time.
The Parenting Act does not require any particular parent-
ing time schedule to accompany an award of either sole or
joint physical custody. See Neb. Rev. Stat. § 43-2920 et seq.
(Reissue 2016 & Cum. Supp. 2024). The trial court has discre-
tion to set a reasonable parenting time schedule. Thompson
v. Thompson, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The
determination of reasonableness of a parenting plan is to be
made on a case-by-case basis. Wolter v. Fortuna, 27 Neb. App.
166, 928 N.W.2d 416 (2019).
[9,10] The best interests of the children are the primary
and paramount considerations in determining parenting time.
See Winkler v. Winkler, 31 Neb. App. 162, 978 N.W.2d 346
(2022). The Parenting Act provides that the best interests of
a child require a parenting plan that provides for a child’s
safety, emotional growth, health, stability, physical care,
and regular school attendance, and which promotes a child’s
continued contact with his or her families and parents who
have shown the ability to act in the child’s best interests.
See § 43-2923(1) and (3). There exists a broad continuum of
 - 836 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

possible parenting time schedules that can be in a child’s best
interests. State on behalf of Kaaden S. v. Jeffery T., 303 Neb.
933, 932 N.W.2d 692 (2019).
Here, the district court awarded parenting time on an
alternating week-on-week-off basis. This parenting time
schedule is consistent with the court’s express factual find-
ings that both parents are fit and that the best interests of the
children required the ongoing involvement of both Fannie
and Samuel.
Although Fannie asserts Paul and Nickolas will spend much
of Samuel’s parenting time in the care of Aketch or Samuel’s
mother, we have explained that this is not contrary to their best
interests. Rather, in accordance with their best interests, equal
parenting time allows the children to maintain contact with
Aketch and their half siblings.
However, Fannie argues, again, that Samuel’s work sched-
ule causes instability in the children’s routine by requiring
the children’s sleep be interrupted, typically on school nights,
and that it causes them to be very tired and emotional. She
asserts that it is consequently within their best interests to
award Samuel parenting time every other weekend during the
school year. She cites to various cases from other jurisdic-
tions, and one from our court, which she asserts stand for
the proposition that “parents who have to awaken their chil-
dren at odd hours due to their work schedule should not be
granted custody and their parenting time should accordingly
be crafted so to avoid such disruption to the children.” Brief
for appellant at 19.
Although none of these cases are binding on our decision,
for the sake of completeness, we distinguish the case at hand
from our prior, unpublished opinion, Henson v. Carosella,
No. A-20-096, 2020 WL 6878566 (Neb. App. Nov. 24,
2020) (selected for posting to court website). In Henson,
supra, the evidence showed that the father’s work schedule
required the 1-year-old child to wake up and be delivered to
childcare by 5:30 a.m. and that the child had a previously
 - 837 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

established routine wherein he slept from approximately
8 p.m. to 7 or 8 a.m. The district court found the father’s
work schedule would require the child’s routine be dis-
rupted and, therefore, overnight parenting time was not in
the child’s best interests. See id. On appeal, we upheld the
district court’s decision to award the father parenting time
every other weekend and two evenings per week, finding no
abuse of discretion. See id.
In the case at hand, the evidence did not support a finding
that Paul and Nickolas had an established routine that was
disrupted by Samuel’s waking them up and taking them to his
home sometime after 11 p.m. three nights during the week.
Moreover, the child in Henson, supra, was just over 1 year
old and was required to be delivered to childcare early in the
morning. Here, the children are not infants, and they are being
momentarily awakened before going back to sleep at Samuel’s
home for the rest of the night.
Further, Samuel’s work schedule requires that the chil-
dren’s sleep be interrupted only on nights when Aketch
works. The evidence showed she typically works three nights
per week, Wednesday, Thursday, and Friday, and only two of
these nights are school nights. Moreover, we note that Fannie
testified that Paul’s school attendance and performance had
suffered under Samuel’s childcare arrangement. However,
she introduced no evidence to corroborate her testimony.
Rather, her testimony was refuted by Aketch, who testified
she did not observe any difficulties with the children’s going
to school after a night on which they were picked up from
their grandmother’s home. Also, both Samuel and Aketch
testified that Paul’s minimal school absences during Samuel’s
parenting time were attributable to health concerns. We have
also explained Fannie’s claim that being awakened caused
the children to be tired or emotional was unfounded. The
evidence does not support a finding that Paul or Nickolas has
been negatively affected by the sleep interruption caused by
Samuel’s work schedule.
 - 838 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

It is true that Samuel’s work schedule requires that the chil-
dren be cared for by others on weekday evenings while he is
at work and that they be awakened during the night 3 days per
week. However, when all the evidence is considered in light of
Paul’s and Nickolas’ best interests, we cannot find the parent-
ing time awarded here was an abuse of discretion.
3. Child Support
Fannie assigns the court abused its discretion by providing a
credit to Samuel for the cost of the children’s health insurance
and by ordering her to pay child support.
After a hearing on Fannie’s motion to alter or amend, the
district court amended its original child support order. The
Nebraska Child Support Guidelines calculation adopted by the
court in its amended order shows that a $78 credit was given
to Samuel for the cost of Paul’s and Nickolas’ health insurance
coverage. The child support calculation explains this number
was calculated by considering the total cost for adding children
to Samuel’s health insurance, $117, and dividing the cost by
the three children he testified were covered under the policy
(Samuel and Aketch’s other child was on Aketch’s policy),
which came out to be $39 per child. This amount was doubled
to calculate the cost of coverage for two children, Paul and
Nickolas, which was $78.
Also, although the child support calculation attached to the
order indicates Samuel owes child support to Fannie in the
amount of $150 a month for two children and $94 a month for
one child, the amended order required Fannie to pay Samuel
child support in the amount of $150 per month for two children
and $94 per month for one child. The court’s order does not
provide any explanation for this deviation.
(a) Health Insurance Credit
[11] According to the child support guidelines, in calcu-
lating a party’s child support obligation, the increased cost
to the parent for health insurance for the children of the
 - 839 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

parent shall be prorated between the parents. See Neb. Ct.
R. § 4-215(A) (rev. 2020). The parent paying the premium
receives a credit against his or her share of the monthly sup-
port, provided that the parent requesting the credit submits
proof of the cost of health insurance coverage for the child.
See id.
In her brief, Fannie argues that the court erred in awarding
Samuel a credit against his share of monthly support for the
cost of insurance coverage for Paul and Nickolas because the
health insurance plan also covered one of his other biological
children. She asserts that because the premium for child cover-
age is the same regardless of the number of children covered,
and because Samuel would enroll in this family health insur-
ance plan for the benefit of his other child irrespective of Paul
and Nickolas, Samuel incurs no additional cost to provide cov-
erage for Paul and Nickolas and should not be awarded credit.
Samuel asserts that the district court did not abuse its discre-
tion and urges us to affirm its award of child support.
We agree with Fannie that Samuel would pay the same
premium even if Paul and Nickolas were not covered; how-
ever, the district court appears to have given Samuel credit
for two-thirds of the cost of the insurance premium, which we
find strikes an equitable balance. Such an arrangement allows
a percentage of the premium paid to be figured into the total
obligation, helping to offset Samuel’s costs, but it does not
place the entire burden on Fannie where Samuel benefits from
having his other child covered as well.
We approved of a similar approach in Eicke v. Eicke, No.
A-20-081, 2021 WL 1186214 (Neb. App. Mar. 30, 2021)
(selected for posting to court website). In Eicke, supra, the
mother received a credit for the total cost of a health insur-
ance premium that covered the three children of the par-
ties, as well as the mother’s two children from a previous
relationship. The father argued on appeal that the mother
should receive a reduced credit proportional to the number of
 - 840 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

children from their marriage enrolled in the insurance plan,
compared to the total number of children covered. See id. We
agreed with the father’s position, finding it was an appropri-
ate balance, and awarded the mother credit for three-fifths of
the total insurance premium cost. See id.
We accordingly reject Fannie’s argument that, because
Samuel incurs no additional cost for covering Nickolas and
Paul in addition to his other child, Samuel is not entitled to a
deduction for any health insurance premiums.
Fannie also argues that, because the “Dependents Currently
Covered By Health Insurance” section on the insurance docu-
ment introduced at trial is blank, Samuel failed to show that
Paul and Nickolas were actually covered under the policy;
thus, he failed to meet his burden of proof to receive credit
for the increased cost of the insurance coverage. We reject
this argument.
Although the exhibit on which Fannie relies does not indi-
cate that the children were covered under the policy, it was
dated October 2023. Samuel testified that initially, the National
Guard provided coverage, but that at the time of trial in August
2024, he was providing coverage for the children through
his employer. The exhibit identified what the cost of the pre-
mium would be for Samuel alone, along with the increased
premium for dependent coverage. The child support guide-
lines require only that Samuel provide evidence of the cost to
include the children on the policy. See § 4-215(A).
We find that Samuel met his burden of proving the addi-
tional cost to insure Paul and Nickolas and that the district
court did not abuse its discretion in awarding him credit for
two-thirds of the cost of the increased insurance premium.
(b) Deviation Without Explanation
As noted above, the child support worksheet indicated
that Samuel owed child support to Fannie, but the order fol-
lowing the motion to alter or amend required Fannie to pay
 - 841 -
Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. V. SAMUEL O.
Cite as 33 Neb. App. 820

child support to Samuel. No explanation was provided for
the deviation.
[12,13] In general, child support payments should be set
according to the guidelines. See Hotz v. Hotz, 301 Neb. 102,
917 N.W.2d 467 (2018). However, a court may deviate from
the guidelines if their application in an individual case would
be unjust or inappropriate. See id. The court must specifically
find that a deviation is warranted based on the evidence and
state the reason for the deviation in the decree. Id. Any devia-
tion without a clearly articulated justification is an abuse of
discretion. See id.
We agree with Fannie and the State that the district court
abused its discretion by ordering Fannie to pay Samuel child
support without articulating why it deviated from its calcula-
tions. We thus reverse this portion of the court’s order and
remand the cause to the district court with directions either to
enter an order requiring Samuel to pay Fannie child support
consistent with the adopted calculations or to provide a justifi-
cation for its deviation.
VI. CONCLUSION
For the foregoing reasons, we affirm the order of the district
court but reverse the portion of the order pertaining to child
support. We remand the cause with directions to enter an order
consistent with this opinion.
Affirmed in part, and in part reversed
and remanded with directions.